IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CLINCH RIVER CAPITAL
PARTNERS, INC.,

    **Plaintiff,**

v.

ELSEA, INC.,

    **Defendant.**

Case No. 2:11-cv-400

**JUDGE SARGUS**

**MAGISTRATE JUDGE DEAVERS**

## OPINION AND ORDER

Defendant Elsea, Inc. ("Defendant") has brought two counterclaims against Plaintiff Clinch River Capital Partners, Inc., alleging breach of contract and unjust enrichment. This matter is presently before the Court for consideration of Plaintiff's Motion to Dismiss Counterclaim (Doc. 10). For the following reasons, Plaintiff's motion to dismiss is **GRANTED**.

### I.

As alleged in the Complaint, Clinch River Capital Partners, Inc. is the corporate successor to RockBridge Capital Partners. (Compl. ¶ 3.) These entities will collectively be referred to hereinafter as "Plaintiff." According to Defendant's counterclaim, Defendant entered into a contract with Plaintiff in which Plaintiff allegedly promised to serve as Defendant's non-exclusive financial advisor with the goal of arranging financing for Defendant. (Countercl. ¶ 6.) Plaintiff ultimately obtained financing, but Defendant contends that Plaintiff breached the contract by failing to arrange financing in accordance with the terms of the contract.

On February 29, 2009, William Lockhart, the President and Managing Partner of Plaintiff, sent Defendant a proposed contract ("Agreement"). (Countercl. ¶ 5; Countrcl. Ex. 1 at

1

1.) Defendant executed the Agreement on March 3, 2009. (Countercl. ¶ 8.) The Agreement consists of the "Engagement Letter," an attachment, and the "Preliminary Term Sheet." Defendant contends that, in the Preliminary Term Sheet, Plaintiff represented that it would present Defendant with investor backed financing in the amount of approximately $9,200,000 with a repayment term of 120 months. (Countercl. ¶ 7.) However, the Preliminary Term sheet contains the following paragraph:

> This preliminary term sheet is for <u>discussion purposes only</u>. It is not a proposal and is not a financial commitment by RockBridge Capital Partners, Inc. Based upon our discussions associated with this preliminary term sheet, RockBridge Capital Partners, Inc. would issue a detailed proposal for your consideration.

(Countercl. Ex. 1 at 4 (emphasis in original).) Additionally, the Engagement Letter includes the following language:

> Upon acceptance of these terms, RockBridge would manage the transaction process and arrange the financing with one or more qualified institutional investors. Please understand this is not a financing commitment by RockBridge, but represents our non-exclusive right to introduce potential investors and arrange the financing as described on the attached Preliminary Term Sheet which is made a part of this agreement. Final commitment of actual financing will be subject to the investors' approval(s) and acceptance of the transaction, including credit, pricing and documentation.

(Countercl. Ex. 1 at 1.)

Plaintiff secured financing for Defendant through a company known as Century Services (USA), Inc. (Countercl. ¶ 9.) On or about September 18, 2009, Defendant executed a Term Loan and Security Agreement with Century Services, which provided Defendant with a $5,000,000 loan and a repayment term of only twelve months. (Countercl. ¶¶ 9–10.) The closing of this loan resulted in payments of approximately $200,000.00 by Defendant to Plaintiff as a "success fee" pursuant to the Agreement. (Countercl. ¶ 11.)

In Count I of the Counterclaim, Defendant contends that Plaintiff breached the Agreement by failing to provide financing of the amount and term specified in the Preliminary Term Sheet. In Count II, Defendant further contends that Plaintiff's retention of the $200,000 success fee constitutes unjust enrichment because of Plaintiff's alleged failure to meet the terms of the Agreement.

## II.

Plaintiff has moved to dismiss Defendant's counterclaims pursuant to rule 12(b)(6). A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

## A.

Plaintiff asserts that Count I of the Counterclaim, which states a claim for breach of contract, should be dismissed because Defendant based this claim on "promises" which simply do not exist in the Agreement. Plaintiff specifically contends that assertions in the Counterclaim directly contradict the unambiguous language of the Preliminary Term Sheet, which disavows any "promise" to obtain any certain amount of financing pursuant to any certain terms.

3

Defendant argues that the Preliminary Term Sheet was incorporated into the Agreement, and, to give effect to all language of the Agreement, the Engagement Letter and Preliminary Term Sheet must be read as whole and in a way that does not render either document meaningless or useless. Accordingly, when both documents are read together, Plaintiff was required to provide financing at the approximate terms of the Preliminary Term Sheet. Plaintiff does not contest that the Preliminary Term sheet was incorporated into the Agreement. However, Plaintiff asserts that the parties understood that no contractual obligations to secure the approximate terms of financing were created by the Preliminary Term Sheet, as this was made clear on the first page of the Engagement Letter and in the Preliminary Term Sheet itself. Thus, according to Plaintiff, the language of the Agreement reveals that the $9,200,000 reference was not a promise or financing commitment, and the final commitment of actual financing would be subject to approval by investors.

In cases brought before the court pursuant to diversity jurisdiction, the court will apply the substantive law of the forum state. *Davis v. Sears, Roebuck and Co.*, 873 F.2d 888, 892 (6th Cir. 1989). "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272–73 (Ohio 1984)). "In determining whether contractual language is ambiguous, the contract 'must be construed as a whole[.]'" *Id.* (quoting *Tri-State Grp., Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio Ct. App. 2002)). Further, "[t]he role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007). "Where the terms in a contract are not ambiguous, courts are constrained to

4

apply the plain language of the contract[,]" id., and "[t]he intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.,* 667 N.E.2d 949, 952 (Ohio 1996).

The inclusion of the unambiguous language "for discussion purposes only" and "not a financial commitment" indicates that the parties did not intend for the Preliminary Term Sheet to constitute any promises for which a breach of contract cause of action can be brought. The Preliminary Term Sheet, however, must be read in conjunction with the entire Agreement as a whole, as it was integrated into the Agreement. Directly subsequent to the incorporation of the Preliminary Term Sheet, the Engagement Letter contains the language "[f]inal commitment of actual financing will be subject to investors' approval(s) and acceptance of the transaction . . . ." This language suggests that no commitment at specific terms is promised, and is consistent with the "for discussion purposes only" language of the Preliminary Term Sheet. In reading the Agreement as a whole, the language of the Agreement denotes conformity between the terms of the Preliminary Term Sheet and the Engagement Letter.

As the terms of the Preliminary Term Sheet and the Engagement Letter do not contradict, the Court finds no ambiguity in the terms of the Agreement. Therefore, the intent of the parties must be determined by looking at the plain language of the Agreement. The plain language indicates the parties intended the financing terms described in the Preliminary Term Sheet to be "for discussion purposely only[,]" and that Plaintiff would attempt to obtain said financing for Defendant. Thus, the Agreement did not create a contractual obligation to secure financing at the approximate terms stated in the Preliminary Term Sheet. Accordingly, as the financing terms expressed in the Preliminary Term Sheet do not constitute enforceable promises, Defendant's counterclaim for breach of contract does not state a claim for relief that is plausible on its face.

5

**B.**

In Count II of the Counterclaim, Defendant brings a claim for unjust enrichment on the theory that Plaintiff was not entitled to retain the $200,000 success fee because Plaintiff had breached the Agreement by not providing financing in accordance with the Preliminary Term Sheet. The Court concluded in Part II.A *supra*, that the Agreement did not create a contractual obligation to obtain financing at the approximate amount and term of repayment stated in the Preliminary Term Sheet. Accordingly, as Count II of the Counterclaim is predicated on an interpretation of the Agreement rejected by the Court, it too must be dismissed.

**III.**

For the foregoing reasons, Plaintiff's Motion to Dismiss Counterclaim (Doc. 10) is **GRANTED.** Defendant Elsea's counterclaims for breach of contract and unjust enrichment are dismissed with prejudice.

**IT IS SO ORDERED.**

11-9-2011
**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**